UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHRISTOPHER PAGAN,

                                        Plaintiff,

                        vs.

SUPERINTENDENT BROWN, BRIGGS,                    9:08-CV-724
DONALD WILLIAMS, MRS. ROBERTO[1],               (J. Kahn)
VERN FONDA;

                                        Defendants.

_____

CHRISTOPHER PAGAN, Plaintiff *Pro Se*
KRISTA ROCK, Assistant Attorney General for Defendants Brown, Roberto, Fonda
JULIE C. LONSTEIN, ESQ. for Defendant Briggs
ROBERT D. COOK, ESQ. for Defendant Williams

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28

U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint[2], plaintiff alleges that Correction Counselor

Briggs sexually harassed and sexually assaulted plaintiff on several occasions.

(Compl. at 2-6).  (Dkt. No. 1).  Plaintiff alleges that Superintendent Brown failed to

protect plaintiff from Correction Counselor Briggs's sexual advances, and failed to

---

[1]Plaintiff's complaint makes allegations against "Mrs. Robergo."  According to the
Acknowledgment of Service, the person in question is Andrea Roberto.  (Dkt. No. 14).  The
court will refer to this defendant by using the correct spelling.

[2]This complaint was transferred to this court from the Southern District of New York by
Order of the Honorable Kimba Wood, dated June 22, 2008.  (Dkt. No. 3).

stop the sexual assaults and harassment once advised of them.  (Compl. at 6).

Plaintiff alleges that Ms. Roberto and Vern Fonda, both of the Inspector General's

Office, failed to contact New York State Police "and have Mr. Briggs arrested" for

the sexual assaults and harassment.  (Compl. at 6-7).  Plaintiff alleges that former

District Attorney of Ulster County, Donald Williams failed to investigate plaintiff's

allegations and did not prosecute Mr. Briggs.  (Compl. at 7).  Plaintiff seeks

substantial monetary relief.  (Compl. at 2-7).

Presently before the court are three motions to dismiss pursuant to FED. R. CIV.

P. 12(b)(6).  (Dkt. Nos. 19, 20, and 21[3]).  Plaintiff has not responded in opposition to

the motions.  For the following reasons, this court recommends dismissal of the

complaint as to Defendants Brown, Roberto, Fonda and Williams, and granting in

part the motion to dismiss by Defendant Briggs.

## DISCUSSION

### 1.   <u>Motion to Dismiss</u>

To survive a motion to dismiss, the plaintiff must provide "the grounds upon

---

[3]The defendants have been served, with the exception of Defendant Williams.  (Dkt. Nos. 11, 12, 13, 14, 17 and 22).  Defendant Williams also moves to dismiss under FED. R. CIV. P. 12 (b)(4) for insufficient service of process.  (Dkt. No. 21).  Defendant Williams states that service was attempted at the Ulster County District Attorney's Office, but that he was not personally served at his home or place of employment.  (Dkt. No. 21, Williams Affidavit, ¶ 2).  Defendant Williams further states that when he eventually received the summons and complaint from his former office, he forwarded them to the Ulster County Attorney's Office "who subsequently arranged for the [law firm] to represent my interests in this lawsuit."  *Id.*  The court does not reach this argument because it recommends dismissal for failure to state a claim on which relief can be granted.

which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)).  *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (May 18, 2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").  When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citations omitted).

The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)(per curiam).  In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)(citing *Cosmas v.*

3

*Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)).  Plaintiff did not respond to defendants'

motions.

## 2.    Facts

Plaintiff, a blind inmate[4], alleges that while he was incarcerated at Eastern

Correctional Facility in Naponoch, New York, Correction Counselor Briggs

"violated my right to be free from assault, my right to equal protection, my right to be

in a safe and healthy place of confinement, right to be free of sexual assault and he

violated my right's of Title II (ADA) American Disability Act 1973 Rehabilitation

Act. section 504 [sic]."  (Compl. at 2, 6).  Plaintiff does not further explain the

allegations against Mr. Briggs in the text of the complaint.

Between the second and sixth pages of his complaint, plaintiff inserted a three-

page letter that he addressed to "Ms. Matima" at the Office of Mental Health

Services, dated November 19, 2007.  (Compl. at 3-5).  The letter contains much more

detailed allegations against Mr. Briggs.  *Id*.  In the letter, plaintiff details alleged

sexual harassment and abuse by Defendant Briggs from May until November 2007.

*Id*.

In May 2007, plaintiff alleges that Mr. Briggs inappropriately commented on

plaintiff's physical fitness, and that Mr. Briggs touched plaintiff on the buttock.

(Compl. at 3).  Plaintiff alleges that Mr. Briggs's inappropriate comments about

---

[4]In his complaint, plaintiff states that he is "blind."  The court has no independent
confirmation of plaintiff's blindness or the degree of plaintiff's alleged impairment.

plaintiff's body occurred again in June 2007. *Id*. Plaintiff alleges that Mr. Briggs touched plaintiff's thigh and penis in July 2007. Plaintiff alleges that the verbal sexual harassment continued in October 2007. (Compl. at 4). Plaintiff also alleges that Mr. Briggs sexually assaulted plaintiff in October 2007. *Id*.

Plaintiff claims that Superintendent Brown "allowed Mr. Briggs to continue to be around me until the Inspector General finished conducting his investigation, leaving me in harms [sic] way." (Compl. at 6). Plaintiff states Defendant Brown "failed to protect me, deliberate indifference [sic], violated my 8th Amendment rights and failed to stop the sexual assault and harassment." *Id*.

Plaintiff states that Defendant Roberto conducted an investigation of plaintiff's allegations. *Id*. Plaintiff claims that Defendant Roberto "determined that [plaintiff's] allegations were true." *Id*. Plaintiff alleges that Defendant Roberto "then collaborated with Superintendent Brown and refused to contact the State Police and have Mr. Briggs arrested for sexual assault and sexual harassment, violating my 8th Amendment rights and showing deliberate indifference to save the state employee." *Id*.

Plaintiff alleges that Defendant Fonda, as the head of the Inspector General's Office, should not have allowed Defendant Roberto to make "any deals" with Defendant Brown. (Compl. at 7). Plaintiff also alleges that once he reviewed Defendant Roberto's report, Defendant Fonda "should have had Mr. Briggs arrested

by State Police and prosecuted for sex crimes." *Id*.  Plaintiff alleges that Defendant Fonda "violated my 8th Amendment rights and showed deliberate indifference to me in deference to the Correction Counselor I sue [Mr. Briggs]." *Id*.

Plaintiff states that on October 23, 2007, he wrote a letter to then-Ulster County District Attorney Donald Williams, complaining about "the crimes that were committed against me." *Id*.  Plaintiff alleges that Defendant Williams failed to protect plaintiff from the violation of his Eighth Amendment rights and showed deliberate indifference toward plaintiff by failing "to send an investigator from his office" and for failing to notify the State Police of plaintiff's allegations.  *Id*.

**3.      Document Incorporated by Reference**

Two of the pending motions to dismiss include redacted versions of the May 2008 Investigative Report generated after the investigation by the Inspector General's Office.  (Dkt. No. 19, Rock Declaration, Ex. A; Dkt. No. 20, Lonstein Affirmation, Ex. A).  The investigative report concluded that plaintiff's allegations were unsubstantiated.  *Id*.  Plaintiff did not include the report with his complaint, and stated that the Inspector General refused to share the findings in the report with plaintiff.  (Compl. at 8).  Defendants rely on the Investigative Report, and argue that because the report is referenced in the Complaint, it should be considered integral to the complaint, or incorporated by reference into the pleading.  (Dkt. No. 19, Rock Dec'l at ¶ 5).

"In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The court may consider documents attached to the complaint or incorporated in it by reference, and deem the documents part of the pleading. See *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999). "In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." *Roth*, 489 F.3d at 509 (internal citations omitted).

In this case, plaintiff's November 19, 2007 letter to Ms. Matima is attached to the complaint, and may, thus be considered part of the pleading. Plaintiff also refers to the Investigative Report issued by the members of the Inspector General's Office, stating that it corroborated his complaints. (Compl. at 6). Since plaintiff bases much of the complaint on the "result" of the alleged report, even though plaintiff is mistaken about the outcome, the court finds that the May 2008 Investigative Report is incorporated by reference into the pleadings and may be considered in deciding this motion.

**4.** **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendant's burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the

8

administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.  In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a)(Inmate's Responsibility).

There is also an expedited process for the review of complaints of ***inmate harassment or other misconduct by corrections officers or prison employees***. 7 NYCRR § 701.8 (emphasis added).  Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a).  The inmate then files a grievance under the normal procedures outlined above, but all

grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(b).  Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* §§ 701.8(c); 701.8(d)(1)-(d)(3).  An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h).

In this case, plaintiff states that he did not file any "grievances" related to these allegations.  (Compl. at 8).  Plaintiff states that he did not file any grievances because the grievance process "doesn't handle complaints of the severity mine was [sic]." *Id*.  Plaintiff further states that his allegations were investigated by the Inspector General's Office.  *Id*.  Defendants have interpreted this statement as plaintiff's argument that the Inspector General's investigation sufficed to exhaust plaintiff's administrative remedies under the PLRA.  (Dkt. No. 19, *Memo*. at 4; Dkt. No. 20, Lonstein Affirmation, ¶ 6).  Defendants argue that plaintiff has not met the exhaustion requirement regardless of the Inspector General's investigation. (Dkt. No. 19, *Memo* at 4-8).

The Second Circuit has developed a "three part inquiry" to determine whether

10

an inmate has fulfilled the PLRA exhaustion requirement, notwithstanding the failure to file a formal grievance. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir, 2004)).   The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*  Special circumstances include a reasonable misunderstanding of the grievance procedure.  *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686). In *Giano*, the Second Circuit noted that the resolution of the exhaustion issue does not necessarily fit exactly into any of the three categories, and a particular fact pattern may implicate one or a combination of these factors. *Giano*, 380 F.3d at 677 n.6. *See also Snyder v. Goord*, 9:05-CV-1284, 2007 U.S. Dist. LEXIS 28308, *23 n.9 (N.D.N.Y. Feb. 28, 2007)(Peebles, M.J.)(report-recommendation)(citing *Giano, supra*).

In *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), the Second Circuit discussed whether the plaintiff's filing of administrative tort claims as well as making informal complaints to prison officials satisfied the exhaustion requirement, notwithstanding plaintiff's failure to utilize the Bureau of Prisons's formal grievance procedure.[5]

---

[5] Macias was a federal prisoner, raising his constitutional claims under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  As shown by *Macias*, the PLRA requirement applies equally to section 1983 claims and *Bivens* actions.

*Macias v. Zenk*, 495 F.3d 37, 42-44 (2d Cir. 2007). The court held that although the filing of the administrative tort claims and the informal letters would serve to alert the prison officials to the nature of the plaintiff's claim and may have put them "on notice" of the plaintiff's concerns, after *Woodford*, "notice" is not enough. *Id.* at 44 (citing *Woodford*, 548 U.S. at 94-95). If the inmate does not comply with the "critical procedural rules," he will not have complied with the PLRA's exhaustion requirement. *Id.*

The court in *Macias* overruled its prior decision in *Branham v. Clancy*, 425 F.3d 177, 183 (2d Cir. 2005) to the extent that *Branham* might have provided support for an argument that an inmate will have exhausted his claims informally by providing enough information about his grievance to take responsive measures. *Macias*, 495 F.3d at 43-44. The court in *Macias* distinguished "substantive" exhaustion and "procedural" exhaustion, holding that the inmate must do both. *Id.* at 43. Thus, generally, an inmate's attempt to exhaust by simply writing a letter, either to supervisory officials or directly to the Inspector General, will ***not*** suffice to exhaust administrative remedies. *See Grey v. Sparhawk*, No. 99 CIV. 9871, 2000 U.S. Dist. LEXIS 8656, *5 (S.D.N.Y. June 23, 2000)(holding that a complaint filed directly with the Inspector General did not excuse the plaintiff "from adhering to the available administrative procedures").

However, in *Marvin v. Goord*, the Second Circuit held that "[r]esolution of the

12

matter through informal channels satisfies the exhaustion requirement because under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy." *Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir. 2001).  This holding has been interpreted to mean that "a grievance through informal channels satisfies the exhaustion requirement ***if the prisoner thereby obtained a favorable resolution of his grievance***." *Thomas v. Cassleberry*, 315 F. Supp. 2d 301, 304 (W.D.N.Y. 2004) (citations omitted).  *Cf. Giano*, 380 F.3d at 679 (finding that plaintiff's attempt to expose allegedly retaliatory behavior during a disciplinary hearing which centered on the same retaliatory act of which plaintiff complains provided a basis to find justification for plaintiff's failure to exhaust).

In *Ruggiero v. County of Orange*, the Second Circuit discussed the issue of whether administrative remedies were "available" to an inmate after an "informal" attempt at resolving the issue. *Ruggiero v. County of Orange*, 467 F.3d 170 (2d Cir. 2006).  In *Ruggiero*, plaintiff complained about excessive force by corrections officers. *Id.* at 172-73.  During the investigation of an incident involving an altercation between plaintiff and another inmate, Ruggiero told authorities about some of the mistreatment that he had experienced at the hands of corrections officers. *Id.*  These complaints resulted in Ruggiero's transfer to another facility to separate him from the officers of which he complained. *Id.*  Although Ruggiero never filed a

formal grievance, he argued, *inter alia*,[6] that his interview with investigators,

resulting in the remedy that he sought, excused the failure to exhaust. *Id.* at 176.

In finding that Ruggiero's administrative remedies were still "available" to

him, notwithstanding his statements to investigators and his subsequent transfer, the

Second Circuit distinguished cases such as *Abney v. McGinnis*, 380 F.3d 663 (2d Cir.

2004), in which the court held that where prison regulations fail to provide for the

defendants' failure to "implement" a favorable outcome to their initial grievance, the

procedures are no longer "available" to the inmate, excusing his failure to further

exhaust his administrative remedies. *Ruggiero*, 467 F.3d at 176.

Instead, the Second Circuit found that Ruggiero's situation was more akin to

the plaintiff in *Branham*, where the court ultimately found that even though plaintiff

received the cell transfer that he requested, administrative remedies were still

available because filing a grievance would have allowed officials to reconsider their

policies and, if appropriate, discipline any officer who acted inappropriately.

*Ruggiero*, 467 F.3d at 177.  The court stated that

> [l]ike the cell transfer belatedly granted to the plaintiff in *Branham*,
> Ruggiero's transfer to Riker's Island, while arguably providing him with
> the relief he sought, did not provide him with all the relief available to
> him.  And as *Booth* and *Branham* make plain, ***so long as some remedy
> remains available***, failure to exhaust is not excused.

---

[6] Plaintiff also argued that the defendants' alleged failure to provide him with an inmate
handbook estopped defendants from raising failure to exhaust as a defense. 467 F.3d at 176.
That argument is not relevant or applicable to this case.

*Id.* (citing *Booth v. Churner*, 532 U.S. 731, 738-39 (2001); *Branham*, 425 F.3d at 183)(emphasis added).

This case presents somewhat of a hybrid situation. The May 2008 Investigative Report states that the investigation was initiated by Superintendent Brown when he "forwarded above information to The Inspector General's Office for whatever action deemed appropriate." (Dkt. No. 19, Rock Declaration, Ex. A; Dkt. No. 20, Lonstein Affirmation, Ex. A).  It is unclear how plaintiff's allegations[7] came to Defendant Brown's attention since plaintiff states that he did not file a "formal" grievance.[8]  Defendant Brown, however, apparently made a determination that the allegations should be investigated by the Inspector General's Office.  Under the regulations for the expedited process for complaints of inmate harassment by corrections officers or prison employees, the investigation of a complaint may be initiated when the Superintendent determines that if true, the allegations would state a "bona fide" case of harassment. 7 NYCRR §§ 701.8(c); 701.8(d)(1)-(d)(3).

Defendants argue that because plaintiff did not receive a "favorable" resolution from this investigation, citing *inter alia Thomas v. Cassleberry,* and *Grey*

---

[7]The May 2008 Investigative Report references the November 2007 letter from plaintiff to Ms. Matima in the Office of Mental Health Services.  (Dkt. No. 19, Rock Declaration, Ex. A at 2; Dkt. No. 20, Lonstein Affirmation, Ex. A at 2).  It is unclear whether Superintendent Brown was aware of this letter before he decided to request an investigation from the Inspector General, or at any time prior to the filing of the complaint.

[8] It is possible that Ms. Matima sent plaintiff's letter to Superintendent Brown for his review.

*v. Sparhawk, supra*, plaintiff does not fit into this exception. (Dkt. No. 19, *Memo* at 7). This case is distinguishable from cases such as *Thomas* and *Grey*, because the plaintiffs in both cases complained directly to the Inspector General, bypassing the administrative procedure completely.  In this case, although plaintiff was incorrect in believing that claims as "serious" as his could not be grieved through the Inmate Grievance Procedure, his letter was ultimately forwarded to the Superintendent as if he had filed a "harassment" grievance.  The Superintendent then forwarded plaintiff's complaint to the Inspector General, whose office conducted a full investigation as if plaintiff had filed a formal harassment grievance.  It is true that the result of the Inspector General was not favorable to plaintiff, but once the Inspector General's office decided that plaintiff's claims were unsubstantiated, plaintiff would have had ***no recourse to appeal this determination***.

In a footnote, citing the "expedited" procedure, defendants state that while the procedure allows for the direct forwarding of a harassment grievance to the Superintendent, the inmate "must still appeal a negative determination to the CORC in order to exhaust his administrative remedies before filing suit." (Dkt. No. 19, *Memo* at 4 n.1).  Defendants cite 7 N.Y.C.R.R. §§ 701.8(h) & (i), 701.5.  A reading of section 701.8(h) shows that an inmate may appeal the Superintendent's "adverse" decision.  An adverse decision by the ***Superintendent*** would be a decision to deny the grievance, or a decision, finding that the grievance did not constitute harassment.

This section does not indicate that plaintiff had a mechanism to appeal the Inspector General's ultimate determination that the claims were unsubstantiated. In this case, the Superintendent's decision was not "adverse" to the inmate since the Superintendent sent the allegations to the Inspector General's office for an investigation.

Thus, it is not clear that plaintiff would have had a remedy "available" to him. In addition, plaintiff apparently believes that the Inspector General's investigation was resolved in his favor. Plaintiff states that the "Inspector General won't give me the findings of their investigation" (Compl. at 8), but also states that Defendant Roberto "determined that the allegations were true." (Comp. at 6). Some of plaintiff's claims are based on this mistaken impression and his concern that defendant Briggs was not disciplined after the investigation.

Plaintiff's misunderstanding of the result of the investigation and his possible inability to appeal the Inspector General's findings,[9] coupled with the fact that plaintiff is blind, lead this court to find that at best, there would be a question of fact regarding whether plaintiff properly exhausted his administrative remedies. The court may find both that administrative remedies were "unavailable" and that plaintiff meets the special circumstances requirement for failure to exhaust. Defendants have filed a motion to dismiss, and therefore, plaintiff's statements

---

[9] If it is unclear to the court that plaintiff had any recourse after the Inspector General's decision, this court cannot impose such knowledge upon a *pro se* plaintiff.

regarding his physical disabilities as well as his misunderstanding of the report must

be assumed to be true.  Therefore, the court will not recommend dismissal for failure

to exhaust administrative remedies.

**4.**      **Respondeat Superior and Personal Involvement**

It is well-settled that in order to be held liable for damages in a section 1983

action a defendant must have been personally involved in the alleged violation.

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S.

1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983

claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481

F.2d 1028, 1033 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, the Second Circuit detailed the various ways in which a

defendant can be personally involved, and thus be subject to individual liability, in a

constitutional deprivation.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

A supervisory official is said to have been personally involved if that official directly

participated in the infraction.  *Id*.  A supervisory official is said to have been

personally involved if, after learning of a violation through a report or appeal, he or

she failed to remedy the wrong.  *Id*.  Personal involvement of a supervisory official is

said to exist if he or she created a policy or custom under which unconstitutional

practices occurred or allowed such a policy or custom to continue.  *Id*.  Finally, a

supervisory official may be personally involved if he or she were grossly negligent in

managing subordinates who caused the unlawful condition or event. *Id*.

Defendants Brown, Roberto, Fonda argue that they were not personally involved in plaintiff's complaints. (Dkt. No. 19, *Memo*. at 9-11). The court does not reach this issue as to Defendants Roberto and Fonda. Based on the report filed by defendants, it is clear that defendant Superintendent Brown ***was advised*** of plaintiff's complaints, and forwarded the complaints to the Inspector General for investigation. The Inspector General conducted an investigation and found that the complaints were unsubstantiated. (Dkt. No. 19, Rock Declaration, Ex. A; Dkt. No. 20, Lonstein Affirmation, Ex. A).

Plaintiff does not allege that Defendant Brown directly participated in the alleged infraction. When defendant Brown became aware of the situation, he sent the allegations to be investigated by the Inspector General's Office. Plaintiff claims that defendant Brown did not allow plaintiff to be exempted from programming in the "Sensory Disability Unit" to keep plaintiff away from defendant Briggs and allowed Briggs to "be around" plaintiff until the investigation was completed. Compl. at 6.

Plaintiff claims that "[e]ven after the charges were substantiated . . . ," defendant Brown allowed Briggs to remain in the facility. *Id.* Plaintiff does not, however, allege that any further harassment occurred during or after the investigation and is clearly mistaken regarding the outcome of the investigation. Where the

supervisor's **only** involvement consists of forwarding correspondence to appropriate staff for review, plaintiff has not alleged sufficient personal involvement to hold Superintendent Brown liable under section 1983. *Ortiz-Rodriguez v. N.Y. Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007)(citations omitted).  The claims against Defendant Superintendent Brown should be dismissed.

## 5.   **Defendant Briggs**

With respect to defendant Briggs, defense counsel argues that plaintiff has not complied with the pleading requirements in FED. R. CIV. P. 8 and 10, and that plaintiff has not stated a claim upon which relief can be granted.

In the Second Circuit, *pro se* pleading are construed liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Erickson*, 551 U.S. at 93.  In this case, plaintiff has not numbered his paragraphs, but he has grouped his claims against each defendant into general paragraphs. (*See* Compl.).  Plaintiff has inserted the letter to Ms. Matima in which he explains his claims against defendant Biggs. Compl. at 3-5.

Read together, the form- complaint and the letter to Ms. Matima clearly state what plaintiff alleges, sufficient to alert defendants to plaintiff's claims.  Plaintiff has alleged two separate 8th Amendment violations, and a violation of the Americans with Disabilities Act ("ADA").  Thus, the court will not recommend dismissal based

upon a violation of Rules 8 & 10 of the Federal Rules of Civil Procedure.

### A. Eighth Amendment Claims

Plaintiff alleges that Defendant Briggs both sexually harassed and sexually assaulted plaintiff.  In order to state an Eighth Amendment claim, the alleged "punishment" must be "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Secondly, the official involved must have a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  "Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."  *Boddie v. Schneider,* 105 F.3d 857, 861 (2d Cir. 1997). In *Boddie v. Schneider*, the Second Circuit found that even when a corrections officer touched the plaintiff's penis, no constitutional claim existed.  *Id.*  In *Boddie*, the court held that the plaintiff

> asserts a small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent.  No single incident that he described was severe enough to be 'objectively sufficiently serious.'  Nor were the incidents cumulatively egregious enough in the harm they inflicted.  The isolated episodes of harassment and touching alleged by [plaintiff] are despicable and, if true, they may potentially be the basis of state tort actions.  But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

*Boddie*, 105 F.3d at 861.  Plaintiff's verbal harassment claims, sexual or otherwise, even if true, do not rise to the level of an Eighth Amendment claim.  However,

plaintiff's allegations of sexual touching, if true, could constitute an Eighth

Amendment claim upon which relief may be granted.  Because this is a motion to

dismiss, plaintiff's statements must be accepted as true. *Erickson, supra.*

Though plaintiff uses the words "equal protection" in his Complaint, plaintiff

has not alleged that he was treated differently than other inmates.[10]  It appears to the

court that this language is part of his Eighth Amendment claims.  To the extent that

plaintiff alleges that he was verbally harassed by Defendant Briggs, the claim should

be dismissed.  To the extent that plaintiff alleges that he was sexually abused by

Defendant Briggs, plaintiff has stated a claim, and the court recommends that the

motion to dismiss this claim be denied.

### B.  ADA Claim

The ADA and section 504 of the Rehabilitation Act are applicable to inmates

in state correctional facilities. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y.

2005).  In order to state a claim under section 504 of the Rehabilitation Act, the

plaintiff must show that he (1) has a disability for purposes of the Act; (2) that he

was "otherwise qualified" for a benefit that he was denied; (3) that he was denied the

---

[10] In order to state an Equal Protection claim, the plaintiff must prove that he was treated
differently than other similarly situated individuals and the difference in treatment was based on
impermissible considerations such as race, religion, intent to punish the exercise of a
constitutional right or bad faith intent to injure the person. *Diesel v. Town of Lewisboro*, 232 F.3d
92, 103 (2d Cir. 2000)(quotation omitted).  Even under a "class of one" equal protection theory,
plaintiff must show that he was treated differently than other similarly situated inmates and that
there was no rational basis for the treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564
(2000).

benefit solely because of his disability; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc*. 246 F.R.D. 432, 440 (S.D.N.Y. 2007).

Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord*, 405 F. Supp. 2d at 274. The standards for determining whether plaintiff states a claim under the ADA and the RA are almost identical.  The only difference in the statutes is that the RA applies to entities receiving federal financial assistance, and Title II of the ADA applies to all public entities. *Messier v. Southbury Training Sch*., 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008).

Plaintiff has failed to state a claim under the ADA and section 504 of the Rehabilitation Act.  Plaintiff simply claims that he is blind, but has not alleged any facts that associate his disability with the actions of any of the defendants.  The fact that plaintiff may be disabled, and that he alleges that he was subject to abuse, simply does not constitute a discrimination claim under the ADA or the Rehabilitation Act.  Plaintiff's claims under these two statutes should be dismissed.

**6.   Inspector General Defendants**

Plaintiff claims that defendant Roberto determined that plaintiff's allegations

23

were true, but that she then conspired with defendant Brown and refused to call the State Police to have defendant Briggs arrested. Compl. at 6.  Plaintiff claims that this conduct shows deliberate indifference to "save the State Employee." *Id.* Plaintiff states that Defendant Roberto "interviewed inmate witnesses and doctors and determined the allegations were true.  Further that [sic] Mental Health confirmed everything." (Compl. at 6).  The May 2008 Investigative Report shows that some witnesses corroborated some of plaintiff's allegations, but the report concluded that the allegations were "unsubstantiated."  (Dkt. No. 19, Rock Declaration, Ex. A; Dkt. No. 20, Lonstein Affirmation, Ex. A).  Essentially, plaintiff complains about the investigation itself.

The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989).  It has been held that there is no constitutional right to an investigation by government officials. *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008)(citing *Nieves v. Gonzalez*, No. 05 Civ. 17, 2006 U.S. Dist. LEXIS 24302, *11-*13 (W.D.N.Y. Mar. 2, 2006); *Longi v. County of Suffolk*, No. CV-02-5821, 2008 U.S. Dist. LEXIS 25468, *22-*23 (E.D.N.Y. Mar. 27, 2008)).  *See also*, *Linares v. Mahunik*, 9:05-CV-625, 2007 U.S. Dist. LEXIS 31488, *5 (N.D.N.Y. Apr. 30, 2007)(Sharpe, J.).

Thus, there is no constitutional violation where the government refuses to investigate a crime, allegations of patent fraud, or an attorney ethics grievance." *Bernstein*, 591 F. Supp. 2d at 460 & n.106 (citing *Longi v. County of Suffolk*, No. CV-02-5821, 2008 U.S. Dist. LEXIS 25468, 2008 WL 858997, *6 (E.D.N.Y. Mar. 27, 2008)). In order for a constitutional violation to have occurred, the investigation itself must have resulted in a deprivation of a constitutional right. *Faison v. Hash*, 03-CV-6475P, 2004 U.S. Dist. LEXIS 29151, *6 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York*, 1996 U.S. Dist. LEXIS 16417, *6 (S.D.N.Y. Nov. 7, 1996)(holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985)(a claim against a police department for failure to investigate is insufficient to state a civil right claim without another recognized constitutional right being involved)).

In this case, plaintiff obtained the investigation that he sought.  Plaintiff's complaint is essentially that the investigation did not result in any punishment for Defendant Briggs.  However, the court notes that plaintiff does not allege that the abuse or harassment continued ***after*** the investigation.  Plaintiff's only allegations are that the investigation did not result in some punishment for Defendant Briggs, or further investigation by the New York State Police.  Plaintiff has already received

25

more than is constitutionally required.  Plaintiff had no right to an investigation, and certainly could not be said to have a right to a particular outcome.  Further, the investigation–and any omission or inadequacy associated with it–did not result in any further allegation of some deprivation of plaintiff's constitutional rights. Plaintiff has not stated a claim upon which relief may be granted as to the Inspector General Defendants Roberto and Fonda[11], and the claims against them may be dismissed.

## 7.   Absolute Immunity

Plaintiff's allegations against former Ulster County District Attorney Donald Williams involve Defendant Williams's decisions not to investigate and not to prosecute plaintiff's allegations. (Compl. at 7).  It is well settled that a prosecutor has "absolute immunity in connection with the decision whether or not to commence a prosecution."  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (absolute immunity for "initiating a prosecution"); *Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1987) (filing a criminal information); *Taylor v. Kavanagh*, 640 F.2d 450, 453 (negotiating a guilty plea); *Powers v. Coe*, 728 F.2d 97, 103-04 (2d Cir. 1984) (entering an agreement not to prosecute); *Schloss*

---

[11]Plaintiff alleges that Defendant Fonda is the Director of the Inspector General's Office, and that Defendant Roberto reports to Defendant Fonda.  It appears that plaintiff is making an argument that the doctrine of *respondeat superior* should apply as against Defendant Fonda. Plaintiff has not alleged any personal involvement by Defendant Fonda.  Furthermore, at the point that the May 2008 Investigative Report stated that the allegations were unsubstantiated, it is unclear what further action the Inspector General's Office or Defendant Fonda could have taken. For these additional reasons, the claims against Defendant Fonda should be dismissed.

*v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989) ("As a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on the decision not to prosecute." (emphasis in original))).  Defendant Williams is entitled to absolute immunity as to plaintiff's claims against him, and the claims against him may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED,** that the motions to dismiss by Defendants Brown, Roberto, Fonda (Dkt. No. 19) and Williams (Dkt. No. 21) be **GRANTED** and the complaint dismissed as to Defendants Brown, Roberto, Fonda and Williams; and it is further

**RECOMMENDED,** that Defendant Briggs's motion to dismiss (Dkt. No. 20) be **GRANTED IN PART** with respect to plaintiff's verbal sexual harassment and ADA claims; and it is further

**RECOMMENDED,** that Defendant Briggs's motion to dismiss (Dkt. No. 20) be **DENIED IN PART** with respect to plaintiff's Eighth Amendment claims of sexual abuse.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 27, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge